NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WYETH, et al.,** | Civil Action No. 09-4850 (JAP) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION |
| **ABBOTT LABORATORIES, et al.,** | |
| Defendants. | |

This matter comes before the Court upon Plaintiffs Wyeth and Cordis Corporation's ("Plaintiffs") motion to amend their Complaint in order to add Abbott Laboratories Inc. ("ALI") as a defendant. Defendants Abbott Laboratories and Abbott Cardiovascular Systems, Inc. (collectively, "Abbott") oppose the addition of ALI as a defendant. The Court has fully reviewed and considered all arguments made in support of and in opposition to Plaintiffs' motion. The Court considers Plaintiffs' motion without oral argument pursuant to Fed.R.Civ.P. 78. For the reasons set forth more fully below, Plaintiffs' motion is GRANTED.

**I.      Background and Procedural History**

This is a patent infringement case dealing with United States Patent Nos. 7,591,844 (the "'844 patent"), and 6,746,773 (the "'773 patent") (collectively, the "patents-in-suit"). Plaintiffs sell a drug-eluting stent known as the CYPHER stent, a drug/device combination for the treatment of coronary artery disease, which they claim is covered by the patents-in-suit.

Plaintiffs further claim that Defendants'[1] use of the XIENCE V stent (Abbott) and Promus stent (BSC) infringes upon the patents-in-suit. At issue in the current motion is Plaintiffs' request to add ALI, the Abbott entity that apparently sells the allegedly infringing XIENCE V stent in the United States, as a defendant in this matter.

Plaintiffs argue that their motion to add ALI as a defendant is timely, as the Scheduling Orders entered in this case do not establish any deadline for moving to amend the pleadings.  Plaintiffs further argue that the addition of ALI is warranted under the liberal standards set forth in FED.R.CIV.P. 15.  In this regard, Plaintiffs argue that they did not unduly delay in seeking to add ALI as a defendant and that their failure to add ALI to this litigation earlier in no way resulted from a lack of diligence.  Indeed, Plaintiff's claim that, despite having sought to obtain information that should have disclosed ALI's role with respect to the sale of the XIENCE V stent through discovery and despite the fact that Abbott's initial disclosures should have revealed said information, Abbott failed to reveal ALI's role as the seller of the XIENCE V stent in the United States.

For example, with respect to Abbott's initial disclosures, Plaintiffs claim that Rule 26(a)(1)(A)(i) requires a party to identify "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses[.]" Similarly, Rule 26(a)(1)(A)(ii) requires a party to describe the location of relevant documents in its "possession, custody, or control" which it "may use to support its claims or defenses."

---

[1]The term "Defendants" refers collectively to Abbott as well as to Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC").

Plaintiffs argue that despite the fact that ALI was apparently the entity that sold the XIENCE V stent in the United States since its launch in 2008, Abbott did not identify ALI's sales records in its initial disclosures. Plaintiffs also argue that Abbott likewise failed to identify any ALI employee as an individual likely to have discoverable information on which Abbott may rely. As a result, Plaintiffs maintain that there was nothing in Abbott's initial disclosures to suggest that ALI was a potential defendant

With respect to Abbott's discovery responses, Plaintiffs argue that Abbott never claimed that it did not infringe the patents-in-suit because it was not the seller of the XIENCE V stent. Plaintiffs argue that Abbott never made that claim despite the fact that Plaintiffs furnished Abbott with an interrogatory on May 13, 2010, requesting that Abbott "'set forth in detail the complete legal and factual bases for your allegation that you have not infringed the claims of the patents-in-suit.'" (Pl. Br. at 2 (quoting Weiner Decl. Ex. E., Plaintiffs' First Set of Interrogatories to Defendants at Interrogatory No. 1)). Indeed, Plaintiffs note that in response to their interrogatory, Abbott never claimed that another company, ALI, was the actual seller of the XIENCE V stent in the Unites States.

Further, Plaintiffs contend that they attempted to conduct discovery regarding which Abbott entity sold the XIENCE V stent in the United States. For example, Plaintiffs claim that they inquired into Abbott's corporate structure during a 2009 deposition in a different matter.[2] During that deposition, Abbott's corporate witness identified ALI as a separate legal entity from

---

[2] The 2009 deposition pertained to the following earlier filed cases: (1) Civil Action Nos. 08-230 and 08-1020 (JAP) (D.N.J.) (collectively, the "Morris patent litigations"); and (2) Civil Action Nos. 07-2265, 07-2477, 07-2728 and 07-5736 (JAP) (D.N.J.) and Civil Action Nos. 07-333-SLR, 07-348-SLR, 07-409-SLR, 07-765-SLR (D. Del.) (collectively, the "Wright/Falotico litigation").

Abbott Cardiovascular System, but did not testify that it was a separate entity from Abbott Laboratories. On this point, Plaintiffs note that Abbott's corporate witness testified only that ALI had a separate management team from Abbott; the witness did not identify ALI as the entity that was selling the XIENCE V stent in the United States. Moreover, Plaintiffs also note that Abbott's corporate witness was unable to identify what ALI was an acronym for.

In addition, Plaintiffs argue that there was nothing in Abbott's public filings that identified a connection between ALI and the XIENCE V stent. For example, Plaintiffs claim that Abbott's 10-K filings did not identify ALI as the seller of the XIENCE V stent. Similarly, Plaintiffs contend that there is nothing in the Instructions for Use for the XIENCE V stent that references ALI. Instead, the Instructions for Use contain an Abbott Laboratories' copyright.

Likewise, Plaintiffs claim that their past litigation history with Abbott did not put it on notice that ALI sold the XIENCE V stent in the United States. In this regard, Plaintiffs argue that Abbott Laboratories and its subsidiary, Abbott Cardiovascular Systems, Inc., were the sole plaintiffs in an earlier declaratory judgment action against Cordis Corporation ("Cordis") relating to the XIENCE V stent. (*See Abbott Laboratories v. Johnson and Johnson, Inc.*, Civil Action No. 06-613 (D.Del. Sept. 26, 2006)). Plaintiffs further note that the complaint in the declaratory judgment litigation described the XIENCE V stent as "one of Abbott Cardiovascular Systems, Inc.'s 'key assets.'" (P. Br. at 1 (quoting Weiner Decl. Ex. C, Complaint in *Abbott Laboratories v. Johnson and Johnson, Inc.*, Civil Action No. 06-613 (D.Del. Sept. 26, 2006))).

Indeed, Plaintiffs argue that, despite their diligent efforts to discover the Abbott entities responsible for selling the XIENCE V stent in the United States, it was not until January 5, 2011, when Abbott responded to Plaintiff's interrogatories served on November 24, 2010 in the Morris

patent litigations, that Plaintiffs learned that ALI sells the XIENCE V stent in the United States. Further, Plaintiffs argue that because Abbott's response only identified ALI, but did not state that ALI was in fact a separate legal entity from Abbott, it was not until April 1, 2011, after Plaintiffs had the opportunity to explore the status of ALI through additional discovery, that they learned that ALI was in fact a separate legal entity from Abbott. Plaintiffs argue that immediately upon obtaining this information from Abbott, they sought Abbott's consent in adding ALI as a defendant in this case. Plaintiffs claim that when they learned that Abbott's consent would not be forthcoming, they promptly filed the instant motion to amend. For these reasons, Plaintiffs argue that there is good cause to permit the addition of ALI under Rule 15(a) because Plaintiffs did not unduly delay in seeking the proposed amendment.

      Similarly, Plaintiffs also argue that the addition of ALI is appropriate because neither Abbott nor ALI will be prejudiced by the addition of ALI as a defendant. In this regard, Plaintiffs argue that because ALI is a subsidiary of Abbott Laboratories, very little additional discovery will be needed. To this end, Plaintiffs argue that Defendants will not be required to defend against new facts or theories or otherwise expend significant additional resources to conduct discovery. Plaintiffs also note that the addition of ALI is a non-substantive change that does not alter the scope of Plaintiffs' infringement claims. As a result, Plaintiffs assert that the addition of ALI as a defendant will not delay the trial of this case.

      Plaintiffs, however, also argue that additional discovery should not be foreclosed if Plaintiffs' motion is granted. In this regard, Plaintiffs claim that the agreement made in the Morris patent litigations to limit discovery into Abbott's corporate structure does not and should not apply in this case, which involves patents and asserted claims unrelated to those at issue in

the Morris patent litigations. As a result, Plaintiffs contend that they should not be foreclosed from inquiring into ALI's corporate structure and activities as they relate to the patents-in-suit in this case. Plaintiffs argue that foreclosing this discovery would be particularly inappropriate where ALI is a subsidiary of Abbott Laboratories and where any additional discovery is expected to be minimal.

  Finally, Plaintiffs argue that the Court should deny Defendants' additional request that ALI be allowed to provide supplemental invalidity contentions. Plaintiffs note that "[p]ursuant to Local Patent Rule 3.7, leave to amend invalidity contentions may be granted only 'by order of the Court upon a timely application and showing of good cause.'" (Pl. Reply Br. at 8). Plaintiffs assert that Defendants cannot show good cause in this case, as the addition of ALI to this litigation is a non-substantive change that will have no effect on the invalidity issues in this case. Plaintiffs additionally claim that they have already planned their litigation strategy based upon Abbott's original invalidity contentions, and allowing Defendants to switch strategies at this stage of the litigation would unduly prejudice Plaintiffs and would significantly delay the resolution of the case.

  Abbott opposes Plaintiffs' motion to add ALI as a defendant, arguing that Plaintiffs' motion is the product of undue delay and that, if granted, Abbott would be unfairly prejudiced. With respect to the timing of Plaintiffs' motion, Abbott claims that Plaintiffs' undue and unexplained delay in attempting to add ALI as a defendant falls short of the Rule 15 standard. In this regard, Abbott argues that, given Plaintiffs' litigation history with Abbott, Plaintiffs have known since before this litigation commenced in 2009 that ALI is a separate legal entity that sells the XIENCE V stent in the United States. To support this contention, Abbott references the June

30, 2009, Rule 30(b)(6) deposition of one of Abbott's corporate witnesses that took place in connection with the Morris patent and Wright/Falotico litigations. During this deposition, Abbott claims that its witness specifically named ALI as the sales corporation responsible for selling the XIENCE V stent in the United States. Defendants also contend that during the same deposition, Plaintiffs recognized that ALI was a separate legal entity from Defendant Abbott Laboratories when Plaintiffs' attorney learned that ALI was a separate legal entity from Defendant Abbott Cardiovascular Systems, Inc.

In addition, Abbott argues that contrary to Plaintiffs' claims, its discovery responses and initial disclosures were proper and made in good faith. With respect to its initial disclosures, Abbott notes that Rule 26(a)(1)(A)(i)-(ii) only requires a party to disclose witnesses and documents that it "may use to support its claims or defenses." Abbott claims that it was not required to disclose ALI witnesses or documents unless it was planning on using them. Further, regarding its response to Plaintiffs' Interrogatory No. 1 served on May 13, 2010, Abbott argues that this interrogatory did not ask Abbott to identify ALI as the party who sells Abbott stents in the Unites States. Instead, Abbott claims that this interrogatory merely asked Abbott to identify its noninfringement contentions. Abbott argues that Plaintiffs' contention that Abbott was required to identify ALI as a seller of Abbott stents in the United States is based on the faulty premise that if an entity does not sell the accused product it cannot be liable for patent infringement. Defendants, however, note that under 35 U.S.C. § 271, infringement can also arise from making or using an infringing product. As a result, Abbott claims that "even if 'another company was the actual seller of the Xience stent in the United States' was . . . a recognized

defense to a patent infringement charge, that defense is inapplicable here." (Abbott Opp. Br. at 10 (quoting P. Br. at 2)).

Abbott further claims that Plaintiffs' contention that XIENCE V's Instructions For Use and Abbott's 2008 Annual Report did not put them on notice that ALI was a separate legal entity responsible for selling the XIENCE V stent in the United States is without merit.  In this regard, Abbott notes that XIENCE V's Instructions For Use Indicate that other Abbott entities, besides Defendant Abbott Laboratories, may be involved with XIENCE V.  Abbott also asserts that the 2008 Abbott Annual Report generically uses the term "Abbott" to refer to Abbott Laboratories and its subsidiaries, including ALI.

In addition, Abbott notes that "'[d]elay may become undue when a movant has had previous opportunities to amend a complaint.'" (Abbot Opp. Br. at 2 (quoting *USX Corp. v. Barnhart*, 395 F.3d 161, 167-68 (3d Cir. 2004)).  Abbott argues that that is exactly the case here: despite having learned that ALI was a separate entity from Abbott Laboratories and Abbott Cardiovascular Systems, Inc. before this litigation was filed, Plaintiffs failed to earlier add ALI as a defendant to this matter despite having twice amended their Complaint.  For these reasons, Abbott argues that Plaintiffs' proposed amendment is the product of undue delay and, consequently, Plaintiffs' request to add ALI as a defendant should be denied.

Abbott also argues that Plaintiffs' request to add ALI as a defendant should be denied because permitting this amendment would unfairly prejudice Abbott.  Initially, Abbott notes that it was willing to not oppose Plaintiffs' motion, if Plaintiffs agreed to abide by the parties' prior agreement to limit discovery into Abbott's corporate structure.  Abbott claims that Plaintiffs' refusal to agree to limit discovery illustrates that, contrary to Plaintiffs' contentions, Plaintiffs

intend to take more than "minimal" discovery. (*See* Abbott Opp. Br. at 5 (quoting Pl. Br. at 5)). Abbott asserts that forcing Abbott to have to incur the cost of engaging in additional discovery is the type of prejudice that justifies denying a motion to amend. Additionally, Abbott contends that Plaintiffs' refusal to agree to discovery limitations shows that Plaintiffs seek to circumvent the prior agreement reached between the parties regarding the scope of such discovery.

Alternatively, Abbott argues that if Plaintiffs' motion to amend is granted, the Court should impose limitations on Plaintiffs' discovery. In particular, Abbott argues that discovery into Abbott's corporate structure and activities should be foreclosed in accordance with the parties' stipulation. Abbott further contends that reasonable modifications will need to be made to the scheduling order to accommodate the addition of ALI at this stage in the litigation. To this end, Abbott asserts that, because the deadline for filing invalidity contentions has already passed, a new deadline should be established so that ALI will have the opportunity to file supplemental invalidity contentions.

## II.    Analysis

### A.    Standard of Review

Pursuant to Fed.R.Civ.P. 15(a)(2), leave to amend the pleadings is generally given freely. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d. Cir. 2000). Nevertheless, the Court may deny a motion to amend "if the Court finds: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the non-moving party; or (4) futility of the amendment." *Corsibiero v. Leica Microsystems, Inc.*, No. 09-975, 2010 WL 5441662, *2 (D.N.J. Dec. 28, 2010) (citing *Alvin*, 227 F.3d at 121). However, where there is an absence of

undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 930, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend under Rule 15(a)(2), "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quoting Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). To establish prejudice, the non-moving party must show that allowing the amended pleading "would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction." *Corsibiero*, at *2 (quoting *Textron Fin.-NJ, Inc. v. Herring Land Group, LLC*, No. 06-2585, 2009 WL 690933, *4 (D.N.J. Mar. 11, 2009)); *See also Long*, 393 F.3d at 400. Delay alone, however, does not justify denying a motion to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate. *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984). Moreover, unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reason for its delay. *See Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).

    **B.**    **Discussion**

Here, Plaintiffs claim that they did not unduly delay in seeking the proposed addition of ALI as a defendant because, despite their diligent efforts, Plaintiffs did not learn that ALI sold

10

the allegedly infringing XIENCE V stent in the United States until January 5, 2011, and did not discover that ALI was a separate legal entity from Abbott until April 1, 2011. In contrast, Abbott argues that Plaintiffs unduly delayed in seeking to add ALI as a defendant. In support of their argument, Abbott relies on Plaintiffs' past litigation history with Abbott to demonstrate that Plaintiffs were aware, before commencing this litigation, that ALI was a separate legal entity and was, in fact, responsible for selling the XIENCE V stent in the United States.

The Court first examines Abbott's claim that Plaintiffs' prior litigation history with Abbott put Plaintiffs on notice of ALI's role concerning the sale of the XIENCE V stent in the United States.  The Court finds that the best case presented by Abbott in support of its claim that Plaintiffs' unduly delayed in filing the instant motion, is its reference to the June 30, 2009, Rule 30(b)(6) deposition of its corporate representative in the Morris and Wright/Falotico litigations. During that deposition, Abbott's witness identified ALI as the sales corporation responsible for selling the XIENCE V stent in the United States, and Plaintiffs' own counsel recognized that ALI was a separate legal entity from Defendant Abbott Cardiovascular Systems, Inc.  However, Abbott's corporate witness did not specifically identify the fact that Abbott Laboratories, Inc. was a distinct legal entity from Defendant Abbott Laboratories.  Indeed, the name "Abbott Laboratories, Inc." was never mentioned during the deposition and Abbott's corporate witness was unable to identify what the acronym ALI stood for when asked by Plaintiffs' counsel. Instead, the Court finds that, at most, Abbott's corporate witness only established the existence of a "separate management team for the sales corporation." (Abbott Opp. Br. Ex., 1 at 36:25-37:9).

Moreover, the Court finds that the remarks made by Plaintiffs' counsel during the deposition only establish that Plaintiffs were aware that ALI was a separate entity from

11

Defendant Abbott Cardiovascular Systems, Inc. They do not support Abbott's contention that Plaintiffs were aware that ALI was a separate legal entity from Defendant Abbott Laboratories. As such, while the 2009 deposition may have given Plaintiffs some notice that ALI had some involvement in the sale of the XIENCE V stent, it certainly did not put Plaintiffs on notice that ALI was a legal entity separate from Defendant Abbott Laboratories responsible for selling the XIENCE V stent in the United States. As a result, the Court shall not bar Plaintiffs from amending their complaint to add ALI as a defendant based on Plaintiffs' prior litigation history with Abbott.

  Further, the Court finds that Plaintiffs were reasonably diligent in their efforts to attain information regarding which Abbott entity sold the XIENCE V stent in the United States. In reaching this conclusion, the Court notes that there was nothing in Abbott's initial disclosures that would have put Plaintiffs on notice of ALI's role in selling the XIENCE V stent in the United States. Abbott made no mention of ALI's sales records when describing the location of relevant documents in Abbott's "possession, custody, or control[.]" Rule 26(a)(1)(A)(ii). Further, Plaintiffs served a Rule 30(b)(6) deposition notice, seeking further information about the Abbott entities selling the XIENCE V stent within the United States within two days of learning in another litigation that ALI was a "corporate entity . . . that has sold or offered to sell" the XIENCE V stent in the United States.

  In addition, while Plaintiffs sought to obtain discovery from Abbott regarding its claims and defenses, Abbott never raised a claim of non-infringement based on the fact that ALI, not Abbott, sold the accused XIENCE V stent in the United States. While this fact alone certainly would not justify adding ALI as a defendant, it is relevant to the Court's decision.

Further, nothing in Abbott's 10-K filings identified a connection between ALI and the XIENCE V stent and even the Instructions for Use associated with the XIENCE V stent refer to Abbott Laboratories, not ALI.

The Court is mindful of the fact that it was not until November 24, 2010, in a separate litigation, that Plaintiffs served an interrogatory that specifically asked Abbott to identify the corporate entity responsible for selling the XIENCE V stent in the United States. The Court, however, is also mindful of the fact that based on the information available to them (i.e., Abbott's initial disclosures, Abbott's 10-Ks, the Instructions for Use associated with the XIENCE V Stent, etc.), Plaintiffs had substantially no reason to believe that any entity other than Abbott Laboratories or Abbott Cardiovascular Systems, Inc. would be listed in response to this question. While the better practice clearly would have been for Plaintiffs to have asked the question sooner, under these circumstances, the Court finds that Plaintiffs were reasonably diligent in seeking to add ALI as a defendant and did not unduly delay in filing the instant motion to amend.

Therefore, the sole question left for the Court is whether Abbott would be unfairly prejudiced by Plaintiffs' proposed amendment. The Court finds that Abbott will not be unfairly prejudiced by the addition of ALI. In this regard, the Court finds that adding ALI as a defendant will not require Abbott to expend significant additional resources to conduct discovery or prepare for trial; nor will it significantly delay these proceedings. While Abbott contends that the addition of ALI will likely result in more than minimal discovery, Plaintiffs contend that any additional discovery will be minimal in light of the fact that ALI is a subsidiary of one of the originally named defendants. The Court believes that the additional discovery necessitated by

ALI's addition will be insubstantial.  To this end, the Court will permit limited additional discovery given the addition of ALI.  While the court shall not prevent Plaintiffs from conducting any discovery regarding Abbott's corporate structure, it does caution Plaintiffs against pursuing broad and unnecessary, even if technically relevant, discovery on this topic.  Instead, Plaintiffs discovery should focus on ALI's role as a seller of the XIENCE V stent in the United States.

The parties are directed to meet and confer regarding the scope of discovery and are instructed to submit a proposed amended schedule to the Court no later than **September 30, 2011**.  To the extent that schedule does not include a firm deadline for moving to amend the pleadings, any such future motion shall be considered untimely and shall be decided under Rule 16(b) in addition to Rule 15(a).  Abbott's request to submit supplemental invalidity contentions is denied.

### III. Conclusion

For the reasons stated above, Plaintiffs' motion to amend their Complaint is GRANTED. An appropriate Order follows.


Dated: September 16, 2011

                                           s/ Tonianne J. Bongiovanni
                                       **HONORABLE TONIANNE J. BONGIOVANNI**
                                       **UNITED STATES MAGISTRATE JUDGE**